## Grimm v. Grimm.

*Divorce—Desertion—Order of support.*

1. An order of support made by the Court of Quarter Sessions on a husband is presumptively based on the ground of desertion.

2. A husband will not be awarded a divorce on the ground of desertion where it appears that he has for a long period paid money to his wife under an order of support, and at the hearing before the master he did not introduce the record of the Quarter Sessions; in such case, it will be presumed from his own testimony and his manner of presenting his case that he had himself deserted his wife.

*Divorce—Consent to separation—Desertion.*

3. The mutual consent which will prevent a divorce on the ground of desertion may be inferred from the conduct of the parties and need not be put in the form of a solemn written agreement.

4. A divorce will not be granted to a husband on the ground of desertion where it appears that, after the alleged desertion, the libellant never offered to return to his wife or have her return to him, and the evidence shows that neither had a desire to live with the other.

Exceptions to master's report. C. P. Schuylkill Co., Nov. T., 1925, No. 23.

*R. S. Bashore*, for libellant; *C. A. Whitehouse*, for respondent.

BERGER, J., June 14, 1926.—This is an action of divorce, brought upon the ground of desertion, by the libellant (the husband) against his wife. The master has recommended a decree in his report, to which three exceptions have been filed. The parties were married Dec. 12, 1887, in Dauphin County, Pennsylvania, and both have been residents of the State continuously since their marriage. The jurisdiction of the court is, therefore, unquestioned. Six children were born to them before their first separation, which occurred in Dauphin County sometime during the year 1909. The respondent, immediately after this separation, lived with her sister in Pottsville for about two months and then moved to Schuylkill Haven, Pa., where she has since continuously resided and maintained a home for and with her children. The libellant resumed marital relations with his wife April 1, 1917, by going to the home which she had established, and lived with her until Sept. 6, 1917, when the desertion charged in the libel is alleged to have occurred. During the period of the first separation the libellant paid his wife, by order of the Court of Quarter Sessions, for her support, the sum of $13 per month; and during the period of the second separation has paid her, by order of the Court of Quarter Sessions, $25 monthly for a like purpose, the latter order remaining in force.

Grimm v. Grimm.

On Sept. 6, 1917, the date of the alleged desertion, the parties lived in a house on St. John Street, Schuylkill Haven, which had been rented by the wife. She appears to have been the head of the family, and her husband, from April 1, 1917, to Sept. 6, 1917, the period covering the resumption of the marital relation, paid toward the maintenance of the home, during the latter part of that time, $40 per month, or about the ordinary charge for board. The wife determined to move to Margaretta Street, in another part of the town, and her husband refused to go with her.

In his fourth finding of fact, which is well supported by the evidence, the master has succinctly stated the libellant's cause as follows: "Coming down, then, to the desertion, it appears to your master that Mrs. Grimm looked for another house; that she rented it and started moving out, telling her husband he could come along if he wished; that he declined to go with his wife to the new home on Margaretta Street selected by her, and that coming home from work to the St. John Street house on the Saturday night after the moving and finding the things taken out, all but his clothes and trunk, with the possible exception of a few window shades, he took his trunk and clothing and went up to Kaufman's to board."

These facts, so clearly stated, led the master to his conclusion that the libellant was entitled to a decree, for, in speaking thereof in the concluding lines of the fourth finding of fact, he said: "Since it is a settled principle of law that the husband selects the place of abode for his family, and not the wife and children, and since it is clearly shown that the respondent selected a new abode for herself to reside, to which the libellant was not willing to move to, your master is of the opinion that the respondent did desert the libellant on Sept. 6, 1917, contrary to the act of assembly in such case made and provided, and that she has persisted in said desertion from said date to the present time."

The master also properly found, as he stated in the opening paragraph of his fourth finding of fact, that, "after reviewing all the testimony carefully, your master is of the opinion that neither the libellant nor the respondent desire to live together as man and wife."

The libellant testified, as previously stated, that he paid his wife for support, during the different periods of their separation, first, the sum of $13 monthly, and then the sum of $25 monthly, by order of the Court of Quarter Sessions. In Carey v. Carey, 25 Pa. Superior Ct. 223, 224, it was held that the primary object of the Act of April 13, 1867, P. L. 78, is to compel a husband to maintain his wife and children, and that it applies to two classes of cases: First, when the husband deserts his wife and takes up his abode elsewhere; and, second, when he continues to reside under the same roof with his wife, but neglects to maintain her. It follows that an order of the Court of Quarter Sessions directing a husband to support his wife is merely persuasive and not conclusive evidence of desertion: Carey v. Carey, 25 Pa. Superior Ct. 223, 224; Phillips's Estate, 271 Pa. 129, 132. It was easily within the power of the libellant to establish the ground upon which the order for maintenance was made against him, by the introduction of the record of the Quarter Sessions; and having failed to do so, a proper inference is that the order was based on the ground of desertion. His desertion of his wife is, therefore, established by his own testimony and by his manner of presenting his case.

There is another reason why a decree should not be entered in this case. The libellant never made any attempt, after Sept. 6, 1917, either to return to his wife or to have her return to him, which fully justifies the master's find-

Grimm v. Grimm.

ing that from and after that date the libellant had no desire to live with his wife; and the wife, it is but just to say, maintained the same attitude toward her husband during that period. The naked mutual desire by persons bound by the bonds of matrimony to have that bond severed, even if it results in a separation, is not a ground of divorce. Such a desire often leads, as it has in this case, in our opinion, to a separation by mutual consent. The mutual consent which will prevent a divorce on the ground of desertion may be inferred from the conduct of the parties, and need not be put in the form of a solemn written agreement: Bracken v. Bracken, 77 Pa. Superior Ct. 219. It has also been held that courts ought never to sever the marriage contract except where the application is made in sincerity and truth for the causes set forth, and no others, and fully sustained by the testimony: Heckman v. Heckman, 81 Pa. Superior Ct. 370; Greims v. Greims, 87 Pa. Superior Ct. 312.

The first exception is dismissed. The second and third exceptions are sustained.

The libel is dismissed, at the cost of the libellant.

From M. M. Burke, Shenandoah, Pa.