James D. Owens v. Commissioner.
Owens v. Commissioner
Docket No. 85523.
United States Tax Court
T.C. Memo 1961-210; 1961 Tax Ct. Memo LEXIS 138; 20 T.C.M. (CCH) 1046; T.C.M. (RIA) 61210; July 17, 1961
*138 Held, amounts paid by petitioner to his wife in 1955 and 1956, pursuant to a court order dated January 5, 1953, are not deductible by petitioner under section 215, I.R.C. 1954, because the amounts so paid were not includible in the gross income of his wife under section 71(a)(1), I.R.C. 1954, since under this latter section petitioner and his wife were not "legally separated * * * under a decree of divorce or of separate maintenance" at the time the payments were made. Valentine B. Deale, Esq., 839 17th St., N.W., Washington, *139 D.C., for the petitioner. Herbert A. Seidman, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined deficiencies in income tax for the calendar years 1955 and 1956 in the amounts of $810.77 and $548.94, respectively. Petitioner assigns but one error, namely, "The determination of tax set forth in the said notice of deficiency is based upon the following error: The deduction provided for at section 215(a) of the 1954 Revenue Code when section 71(a)(1) is applicable was improperly denied to the petitioner." Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioner is an individual and resides in Vienna, Virginia. He filed Federal income tax returns for the calendar years 1955 and 1956 with the district director of internal revenue for the district of Maryland. Petitioner and Helen R. Owens (hereinafter called Helen) were married on June 17, 1943, in Baltimore, Maryland. Two children were born of this union, James D. Owens, Jr., on August 24, 1945, and Patricia Lynn Owens on September 16, 1949. Prior to September 1, 1950, petitioner and his family *140 lived at 3820 Veazey Street, N.W., Washington, D.C. On September 1, 1950, petitioner ceased living at this residence and took a room at the University Club in Washington. On December 27, 1950, petitioner filed a "Complaint for Legal Separation" naming Helen as defendant, in the United States District Court for the District of Columbia, in Civil Action No. 5582-50, and prayed, among other prayers, that "at final hearing plaintiff be awarded a decree of limited divorce on the ground of cruelty." Helen filed an answer to the complaint on January 8, 1951. The answer did not contain a cross-complaint against petitioner nor was such cross-action ever undertaken by Helen in Civil Action No. 5582-50 during the pendency of these proceedings. On January 8, 1951, Helen filed a "MOTION FOR ALIMONY PENDENTE LITE, MAINTENANCE, COUNSEL FEES AND OTHER RELIEF." In this motion Helen requested, among other things, that petitioner be ordered to pay her the sum of $400 per month as support and maintenance for herself and their two children. Petitioner filed an opposition to this motion on January 24, 1951. Helen's motion was referred to the Domestic Relations Commissioner for his recommendation. *141 After reviewing the pertinent facts, the Domestic Relations Commissioner recommended that petitioner be required to contribute to Helen the sum of $65 each week as maintenance pendente lite. On February 16, 1951, petitioner filed an objection to the report of the Domestic Relations Commissioner. On May 8, 1951, the District Court orally entered an order confirming the recommendation of the Domestic Relations Commissioner. A written order embodying the Court's decision was to be prepared by Helen's counsel and submitted to the Court for its signature. On May 23, 1951, petitioner filed a "MOTION IN ARREST OF JUDGMENT OR FOR RECONSIDERATION AND FOR REHEARING." This motion was denied by order of the District Court dated September 20, 1951. On December 12, 1951, Helen filed a "MOTION TO ADJUDICATE PLAINTIFF IN CONTEMPT" together with an affidavit in support of the motion. In this motion it was alleged that petitioner, since the date of the order of May 8, 1951, had paid Helen only $35 per week instead of the $65 per week ordered by the Court. On June 17, 1952, the District Court dismissed petitioner's case for want of prosecution and awarded maintenance of $65 per week to Helen *142 and ordered petitioner to make payments on the house. A written order was to be presented to that effect. On June 25, 1952, an affidavit was filed by petitioner's counsel for the purpose of having the action taken by the District Court on June 17, 1952, vacated. On the same day, the Court - ORDERED that the action taken by the Court on June 17, 1952 be and the same is hereby vacated and set aside, and the cause is referred to the Assignment Commissioner for trial when counsel for both parties are available. Notwithstanding the immediately preceding order, the District Court, on the following day, June 26, 1952, signed an "ORDER FOR MAINTENANCE PENDENTE LITE" wherein it was ordered that petitioner pay to Helen $65 per week, commencing on June 20, 1952, and also to pay all mortgage, repair bills, utility bills and taxes on the Veazey Street premises. On July 23, 1952, Helen filed a motion to adjudicate petitioner in contempt of Court for noncompliance with the order of June 26, 1952, together with an affidavit that petitioner continued to remit to Helen only $35 per week instead of the $65 ordered by the Court. On October 6, 1952, Judge Youngdahl adjudged petitioner in contempt *143 of Court because of his failure to obey the order of June 26, 1952, and ordered the U.S. Marshal to take petitioner into his custody and commit him to jail for a period of 30 days or until such earlier time as he shall purge himself of his contempt by paying Helen or her attorney $220, or until further order of the Court. On October 14, 1952, petitioner filed a motion to vacate the order of October 6, 1952. On October 22, 1952, the case was advanced for trial and on October 29 and 30, 1952, a hearing was held on petitioner's complaint filed December 27, 1950. The clerk of the District Court recorded in summary form what transpired at this hearing in the following fashion: Oct. 29/52 Hearing begun & respited until Oct. 30/52 at 10:00 A.M. Reported by Mark Walter. (Complt. to be dismissed.) Letts, J. Oct. 30/52 Hearing resumed & concluded. Deft. awarded maintenance $35.00/week; payments & repairs on house to be made by pltff., deft. awarded custody; visitation 2-6 P.M. on alternate Saturdays or Sundays. Contempt order vacated; Fee to Hannan $300.00 to be paid by pltff. (Order to be presented.) Reported by Mark Walter. Letts, J. On November 6, 1952, Helen filed a motion for rehearing, *144 together with "POINTS AND AUTHORITIES" in support of the motion, in which she asked that petitioner be directed to pay her at least $50 per week, plus all the other payments. On November 18, 1952, petitioner filed an "OPPOSITION TO MOTION FOR REHEARING" in which he stated: Now comes the plaintiff and opposes the defendant's motion for a re-hearing. Plaintiff says that after full testimony was taken before this court, this court made a finding that plaintiff should pay $35.00 per week plus payments on the house plus payment of all utilities, insurance and taxes. This the court considered a reasonable payment considering the earning capacity of the plaintiff. Plaintiff says that the conclusions of the trial judge are correct and that the petition for re-rehearing would serve no useful purpose and should be denied. On January 5, 1953, Judge Letts signed an order denying the wife's motion for rehearing filed November 6, 1952. Also, on January 5, 1953, Judge Letts signed the "Order" upon which petitioner so heavily relies, the material part of which is as follows: This cause came on to be heard and the Court, after hearing testimony and after hearing argument of counsel, orders that *145 the plaintiff, James D. Owens, be, and he is hereby ORDERED to pay to the defendant, Helen R. Owens, the sum of $35.00 a week, and it is further ORDERED that the plaintiff, James D. Owens, be required to maintain all payments on the house, and pay for utilities, insurance and taxes, and all repairs to the house which James D. Owens, plaintiff, feels are necessary, and it is further ORDERED that the plaintiff, James D. Owens, be allowed the rights of reasonable visitation, and it is ORDERED that the plaintiff, James D. Owens, be and he is hereby allowed to take the children on either alternate Saturdays or Sundays between the hours of two and six, and that it is required that he return the children to the mother, Helen R. Owens, by six o'clock P.M.; this is without prejudice to the right of the plaintiff, James D. Owens, to request this Court to enlarge the period of visitation when the children become older, and it is further ORDERED that so long as the plaintiff, James D. Owens keeps up the payments on the house, taxes and insurance, Helen R. Owens has the sole right of occupancy and shall have custody of the children * * *. On May 23, 1956, Helen filed in the U.S. District *146 Court for the District of Columbia a complaint for absolute divorce (Civil Action No. 2173-56) on the ground of desertion since September 1, 1950. On June 1, 1956, petitioner filed an answer to the complaint. On November 5, 1956, a "FINAL JUDGMENT FOR ABSOLUTE DIVORCE (DESERTION)" was granted to Helen. On the same day, November 5, 1956, an order was entered in Civil Action No. 5582-50 "That this case be and the same is hereby dismissed with prejudice." Petitioner, on his return for 1955, deducted $2,823.79 as "Alimony to Helen R. Owens pursuant to District Court decree Civil Action No. 5582-50." The respondent disallowed the deduction and, in a statement attached to the deficiency notice, he explained his disallowance as follows: (a) It is determined that the deduction of $2,823.79 in your Federal income tax return for the taxable year ended December 31, 1955, is not allowable, since the claimed amount does not constitute alimony within the purview of section 215 of the Internal Revenue Code of 1954 and is not allowable under any other section of the Internal Revenue Code of 1954. Petitioner on his return for 1956 deducted $2,707.50 as "Alimony to H. *147 R. Owens per District Court Decree CA#2173-56 & CA#5582-50." The respondent disallowed $2,476.60 of the amount deducted, and in a statement attached to the deficiency notice, he gave the same reasons for the disallowance as he gave for 1955. During the years 1955 and 1956 petitioner made payments to his wife, Helen R. Owens, in amounts as follows: 1955
1956
Utilities
$ 431.74
$ 415.23
Repairs
448.90
491.42
Insurance
47.13
30.00
Cash
1,820.00
1,700.00
$2,747.77
$2,636.65
Petitioner's wife had custody of their two children subject to petitioner's right of reasonable visitation, and sole occupancy of the premises at 3820 Veazey Street, owned by petitioner and his wife as tenants by the entirety during the entire year 1955 and through November 5, 1956. After November 5, 1956, Helen R. Owens was the sole owner of the aforesaid property, the petitioner no longer having any interest therein. Opinion Petitioner contends he is entitled to deduct the payments he made to his wife during the years 1955 and 1956 in the stipulated amounts of $2,747.77 and $2,636.65, respectively, under section 215 [1] of the Internal Revenue Code *148 of 1954. Under section 215, a husband is allowed a deduction for amounts paid to his wife during the taxable year if such amounts are includible within her gross income under section 71[2] of the same Code. Prior to November 5, 1956, the date of *149 the absolute divorce granted to the wife, petitioner and his wife were not divorced. Therefore, if the payments in question are includible in the gross income of the wife under section 71(a)(1), the payments must fall within that part of section 71(a)(1) which provides "If a wife is * * * legally separated from her husband under a decree of * * * separate maintenance, the wife's gross income includes periodic payments * * * received after such decree." Petitioner, in his brief, has well stated the issue thus: The single issue before the Court is whether at the time of the payments the petitioner and his wife were legally separated within the meaning of Section 71(a)(1) of the Revenue Code of 1954. If the answer is in the affirmative, as petitioner contends, the payments in question are deductible under Section 215(a) of the Code; otherwise they are not. For the reasons hereinafter given, we do not think that prior to November 5, 1956, petitioner and his wife were "legally separated" as that term is used in section 71(a)(1). Petitioner points to that part of the Court's order dated January 5, 1953, wherein the Court ordered "that so long as the plaintiff, James D. Owens keeps *150 up the payments on the house, taxes and insurance, Helen R. Owens has the sole right of occupancy and shall have custody of the children (italics supplied), and argues that the emphasized part of the order in effect "legally separated" the parties. He further argues that he "had no choice but to live separately from his wife and family unless he chose to violate the Order and risk being held in contempt of court." We do not agree. On the basis of the facts set out in our findings, we can come to no other conclusion but that the "Order" of January 5, 1953, relied upon by petitioner as being a decree "legally separating" the parties was essentially a decree for support granting to the wife alimony pendente lite and that the right of the wife to occupancy of the house was intended as a part of the support. Being a decree for support and having been entered prior to March 1, 1954, the payments made by petitioner in 1955 and prior to November 5, 1956 (the date of the absolute divorce) are not to be included in the wife's gross income under section 71(a)(3)[3] of the 1954 Code. *151 Under the laws of the District of Columbia, it has been held "that 'legal separation from bed and board' is a synonymous term with divorce a mensa et thoro." Maschaur v. Maschaur, 23 App. D.C. 87 (1904). Cf. John B. Keleher, 25 T.C. 1154, 1158. Petitioner had asked for a divorce a mensa et thoro but it was never granted and petitioner's complaint was finally dismissed with prejudice. During the pendency of petitioner's complaint, the wife was granted alimony pendente lite. Payments of alimony pendente lite are not deductible by the husband. George D. Wick, 7 T.C. 723, affirmed per curiam, 161 F. 2d 732 (C.A. 3). In Commissioner v. Rankin, 270 F. 2d 160 (C.A. 3, 1959), affirming two Memorandum Opinions of this Court, the Third Circuit referred to our decision in the Wick case in language as follows: In George D. Wick v. Commissioner, 1946, 7 T.C. 723, it was held by the Tax Court of the United States that even payments to a wife for her support as alimony pendente lite under an order of a Pennsylvania common pleas court in a pending divorce a mensa et thoro proceeding did not satisfy the requirements *152 of Sections 22(k) and 23(u) of the Internal Revenue Code of 1939 that the payments be made "under a decree of separate maintenance". The rationale of the Tax Court's ruling was that the alimony payments had been made prior to the granting of the a mensa et thoro divorce decree and that only the latter could effect a legal "separation" of the husband and wife. We affirmed per curiam, 3 Cir., 1947, 161 F. 2d 732 [Italics supplied.] We hold that the order of January 5, 1953, was essentially a decree for support and that petitioner is not entitled to the deductions he seeks. Cf. also Frank J. Kalchthaler, 7 T.C. 625; Charles L. Brown, 7 T.C. 715; Charles M. Hendricks, 30 T.C. 1303; and Russell W. Boettiger, 31 T.C. 477. Decision will be entered for the respondent. Footnotes
1. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71↩ in the gross income of his wife, payment of which is made within the husband's taxable year. * * * 2. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.↩
3. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - * * *
(3) Decree for support. - If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. * * *↩